UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BOBBY BAUCUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 3:21-CV-140-CEA-DCP |
| ) | |
| BLOUNT COUNTY DETENTION ) | |
| FACILITY and ) | |
| SHERIFF BERRONG, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Plaintiff, a federal detainee housed in the Blount County Detention Facility, is proceeding pro se on a complaint alleging violations of 42 U.S.C. § 1983 [Doc. 2]. He has also filed a related motion for leave to proceed *in forma pauperis* in this action [Doc. 1]. The Court will address Plaintiff's motion prior to screening the complaint in compliance with the Prison Litigation Reform Act ("PLRA").

**I.  MOTION TO PROCEED *IN FORMA PAUPERIS***

A review of Plaintiff's certified inmate trust account record demonstrates that Plaintiff lacks sufficient financial resources to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [Doc. 1] will be **GRANTED**.

As a federal detainee housed at the Blount County Detention Facility, Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee, 39702 as an initial partial payment, the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the

filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) has been paid to the Clerk. 28 U.S.C. §§ 1915(b)(2) and 1914(a).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution. The Clerk also will be **DIRECTED** to provide a copy to the Court's financial deputy.

**II. SCREENING**

    **A. ALLEGATIONS OF COMPLAINT**

As paraphrased by the Court, Plaintiff alleges that he has suffered the following twenty-three infringements on his constitutional rights while housed at the Blount County Detention Facility (the "facility"):

1. Inmates are not fed the required 2,000 calorie/day diet [Doc. 2 p. 3].
2. Plaintiff is not allowed to possess reading glasses [*Id*].
3. Plaintiff is denied the free exercise of his religious faith [*Id*. at 4].
4. The facility leaves the lights on too much [*Id*.].
5. The county facility is overcrowded [*Id*.].
6. Visitation is conducted by tablet, which frequently does not work and which denies the inmate private visits [*Id*.].
7. Inmates in regular pods are exposed to workers who have been in quarantine pods without a change in personal protective equipment [*Id*.]
8. Quarantine pod is not sanitized after each pod receives recreation [*Id*.].
9. During recreation time, approximately 24 to 32 inmates are out of their cells with access to only 1 toilet, shower, and sink [*Id*.].
10. Floors are not cleaned after every meal, and tables are infrequently wiped down [*Id*.].

11. The facility refuses to provide Plaintiff with the name of a civil rights lawyer [*Id*. at 5].
12. Plaintiff is charged for medication and medical visits [*Id*.].
13. The facility will allow inmates to send letters only if the mail is legal. Otherwise, inmates must send postcards [*Id*.].
14. The facility restricts purchasing envelopes and/or stamps [*Id*.].
15. The grievance process disallows multiple grievances [*Id*.].
16. There is mold and mildew in the vents [*Id*.].
17. The exhaust fans for the showers do not work [*Id*.].
18. Federal inmates are subjected to cruel and unusual punishment [*Id*.].
19. Federal inmates are denied their legal right to proper mailing material [*Id*.].
20. The facility has denied Plaintiff names and addresses for lawyers and courts [*Id*. at 6].
21. The facility has obstructed justice by refusing to have the proper individual sign Plaintiff's documents to initiate civil actions [*Id*.].
22. Food at the county facility is cold and left uncovered [*Id*.].
23. The facility refuses to help Plaintiff mail legal documents [*Id*. at 7].

Plaintiff asks the Court to compensate him for the violation of his rights in the amount of $300.00 per day or up to $20,000,000, and to move him from the county facility as soon as possible [*Id.* at 8].

B. **SCREENING STANDARD**

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim, however. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### C. ANALYSIS

#### 1. Federal Detainee Status

As a preliminary matter, the Court notes that much of Plaintiff's complaint appears to be centered around the idea that, as a Federal detainee, Plaintiff is entitled to more constitutional protection than a State detainee. Plaintiff is mistaken. There is no constitutional significance between the rights of Federal detainee and a State detainee.[1] Accordingly, any freestanding claim

---

[1] The Court notes that there are differences in constitutional standards regarding one's status as a Federal/State pretrial detainee versus a Federal/State inmate. *See, e.g., Kingsley v. Hendrickson*, 576 U.S. 389, 395-96 (2015) (holding pretrial detainee claiming excessive force under Fourteenth Amendment need only show that force used was objectively unreasonable, abrogating subjective intent prong of Fourteenth Amendment deliberate indifference claim).

4

that Plaintiff is entitled to additional constitutional protections as a Federal, as opposed to State, pretrial detainee will be **DISMISSED** [*See, e.g.,* Claim 18].

## 2. Conditions of Confinement

Plaintiff raises numerous claims that he is subjected to unconstitutional conditions of confinement at the facility. Specifically, he alleges that (1) inmates are not fed the required 2,000 calorie/day diet [Claim 1]; inmates are not allowed to possess reading glasses [Claim 2]; the lights are turned off only 6 to 8 hours per day [Claim 4]; the county facility is overcrowded [Claim 5]; visits are done by tablet [Claim 6]; there is insufficient sanitation between regular pods and the quarantine pod [Claims 7 and 8]; there is only 1 shower, sink, and toilet to share with dozens of inmates during recreation time [Claim 9]; floors and tables are infrequently cleaned [Claim 10]; inmates are charged for medical visits and medication [Claim 12]; there is mold and mildew in the vents [Claim 16]; the exhaust fan in the showers has never worked [Claim 17]; and food is cold and left uncovered [Claim 22].

The Court observes the well-known rule that "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman* 452 U.S. 337, 349 (1981). Instead, only "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities" will establish a cognizable conditions-of-confinement claim. *Hudson v. McMillan*, 503 U.S. 1, 8-9 (1992) (citations and quotations omitted). Prison authorities may not, however, "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). In examining such claims, the court must determine whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that

5

today's society chooses to tolerate." *Helling*, 509 U.S. at 36 (1993); *see also Rhodes*, 452 U.S. at 347.

The Court first observes that "[i]t is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay." *White v. Corr. Med. Servs.*, 94 F. App'x 262, 264 (6th Cir. 2004). While Plaintiff complains that he is charged a fee for medical attention and/or medication, he does not indicate that he has been denied medical care. Accordingly, the fact that Plaintiff is charged for medical care fails to state a claim.

Next, "inmates have no absolute constitutional right to visitation[.]". *Bellamy v. Bradley*, 729 F.2d 416, 420 (6th Cir.1984) (internal citations omitted). Accordingly, the Court finds that the fact that visitation at the facility is concluded over a wireless tablet fails to state a constitutional claim.

Plaintiff's remaining conditions-of-confinement claims fare no better. Plaintiff broadly alleges constitutional violations without any factual specificity. For instance, nothing in Plaintiff's complaint suggests that his diet, the denial of reading glasses, that lights are left off only 6 to 8 hours per day, overcrowding, his exposure to mold or mildew, the absence of functioning exhaust fans in the shower, the lack of specialized cleaning procedures, and/or cold food creates an unreasonable risk of damage to Plaintiff's health. Moreover, Plaintiff does not allege that he has been harmed by any of these conditions, or that he suffers any particular condition that renders his exposure to such conditions unreasonable. Accordingly, Plaintiff's allegations fail to raise Plaintiff's right to relief above a speculative level, and therefore, they fail to state a claim. *See Twombly*, 550 U.S. at 555, 570 570 (holding that an allegation that creates the possibility that a plaintiff might later establish undisclosed facts supporting recovery does not state a plausible claim for relief). These claims will be **DISMISSED**.

### 3. Access to Courts

Plaintiff raises the following claims that the facility has denied him access to the courts: he has been denied access to reading glasses, which prevents him from pursing legal claims [Claim 2]; the facility refuses to provide him with the name of a civil rights lawyer [Claim 11]; the facility refuses to provide him with the proper name and addresses of courts [Claim 20]; the facility has refused to sign the forms necessary to initiate a § 1983 action [Claim 21]; and the facility's postage policy prevents him from sending legal mail [Claim 23].

An inmate has a right of access to the courts under the First Amendment, subject to limited restrictions. *Bounds v. Smith*, 430 U.S. 817, 822 (1977); *Walker v. Mintzes*, 771 F.2d 920, 931-32 (6th Cir. 1985) ("Prison regulations [may] reasonably limit the times, places, and manner in which inmates may engage in legal research and preparation of leg[al] papers so long as the regulations do not frustrate access to the courts.") (citation omitted). In order to establish that his right to access the courts has been infringed, a plaintiff must show that his efforts to pursue a non-frivolous legal claim regarding his conviction or conditions of confinement have been obstructed. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Accordingly, a plaintiff must plead and prove that his meritorious claims have been prejudiced by the alleged denial of access to the courts. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Plaintiff has not alleged any prejudice in this instance. While Plaintiff complains about various practices of the county facility, it is clear that he has been able to properly prepare and transmit documents to this Court, the necessary documents have been certified, and he has the ability to communicate with counsel in his criminal case. In short, Plaintiff has not alleged that he has suffered any prejudice because of the allegedly restricted access, and therefore, his claims alleging same will be **DISMISSED** for failure to state a claim upon which relief may be granted. S*ee Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("An inmate who

claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation.").

4. **Grievances**

Plaintiff contends that the facility interferes with his ability to complete the grievance process by not allowing more than five grievances per month [Claim 15]. However, inmates have no constitutional right to a grievance procedure or in having their grievances satisfactorily resolved. *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Accordingly, any alleged infirmities in the facility's grievance procedure and/or response fails to raise a viable constitutional issue. This claim will be **DISMISSED**.

5. **Free Exercise of Religion**

Plaintiff asserts that the facility refuses to obtain religious texts relevant to his Odinist faith, such as the *Poetic Edda* and *Prosa Edda* [Claim 3], citing the materials as "obscure" [Doc. 2 p. 4].[2]

The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend I. However, prisons do not have to respond to every religious request of an inmate; they only must allow prisoners a reasonable opportunity to exercise their faith. *See Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972). Here, Plaintiff does not allege that he has been denied the ability to

---

[2] Odinism is a pagan religion that honors ancient Norse gods. *See* Odinism and Asatru: *Basic Facts*, at https://www.odinism.net (last visited April 13, 2021). The *Poetic Edda* contains an untitled collection of Old Norse anonymous poems. *See* Wikipedia, *Poetic Edda*, at https://en.wikipedia.org/wiki/Poetic_Edda (last visited April 13, 2021). The Prosa Edda is an old Norse textbook written in Iceland in the 13th century that is "considered the fullest and most detailed source for modern knowledge of Norse mythology[.]" *See* Wikipedia, *Prose Edda*, at https://en.wikipedia.org/wiki/Prose_Edda (last visited April 13, 2021).

engage in any aspect of his religious faith other than the facility's failure to produce a copy of certain religious texts, and he does not allege that the material has been banned or disallowed. Further, Plaintiff does not allege that has been denied permission to have a religious volunteer, family member, or his attorney bring him a copy of those texts. Plaintiff's allegations are, therefore, insufficient to establish that he has been denied his First Amendment rights. Accordingly, this claim will be **DISMISSED**.

### 6. Mail Restrictions

Plaintiff also contends that the county facility restricts inmates from (1) mailing letters to any individuals other than attorneys, as all non-legal mail must be sent by postcard [Claim 13]; and (2) obtaining mailing material such as stamps and envelopes [Claims 14, 19,] and 23].

A prisoner has a First Amendment right to receive and send mail, subject to reasonable limitations for "legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873-74 (6th Cir. 2003); *see also Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Plaintiff complains that his non-legal written communication to the outside world is limited to postcards, and that he is limited in his ability to obtain stamps and envelopes. The record does not contain the facility's policies regarding inmate mail, nor does it contain information concerning the rationale for the facility's mail policies. Thus, the Court cannot determine whether those policies are reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (holding "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests"). Accordingly, the Court finds Plaintiff's

9

Case 3:21-cv-00140-CEA-DCP   Document 5   Filed 06/14/21   Page 9 of 12   PageID #: 29

allegations regarding the restriction of mail colorable, and it will allow these designated claims to proceed.[3]

### 7. Proper Defendants

Having determined which claims will proceed in this action, the Court must determine the proper Defendants. Plaintiff's complaint sets forth no factual allegations that suggest that Sheriff Berrong had any personal involvement in the wrongdoings alleged, and therefore, any claims against him in his individual capacity will be **DISMISSED**. *See, e.g., Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted under § 1983). Moreover, the Blount County Detention Facility is not a "person" within the meaning of § 1983 and claims against the facility will be **DISMISSED**. *Cage v. Kent County Corr. Facility*, No. 96-1167, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) (stating that "[t]he district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983").

However, inasmuch as Plaintiff has alleged that the facility has violated his First Amendment rights pursuant to established policies governing mail, the Court will allow the designated claims to proceed against Blount County and against Sheriff Berrong in his official capacity. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690-91 (1978) (holding

---

[3] To the extent Plaintiff claims that postage and other mailing materials are not provided to him for free, the Court notes that Plaintiff has no constitutional right to obtain free postage or materials to send non-legal mail. *See, e.g., Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Even as an indigent inmate, [the plaintiff] had no constitutional right to free postage for nonlegal mail."); *Brown v. Crowley*, No. 99-2216, 2000 WL 1175615, at *3 (6th Cir. Aug. 10, 2000) ("The First Amendment does not compel prison officials to provide indigent prisoners with unlimited free postage and materials for non-legal mail.").

local governments can be sued under § 1983 for constitutional deprivations made pursuant to custom or policy); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Accordingly, the Clerk will be **DIRECTED** to **TERMINATE** the Blount County Detention Facility and add Blount County as a Defendant in this action.

## III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

5. The Clerk is **DIRECTED** to **TERMINATE** the Blount County Detention Facility and **ADD** Blount County as a Defendant in this action;

6. Plaintiff's claims regarding the restrictions on mail [Claims 13, 14, and 19] shall **PROCEED** against Blount County and against Sheriff Berrong in his official capacity as set forth above;

7. All remaining claims are **DISMISSED**;

8. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Blount County and Sheriff Berrong;

9. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this memorandum and order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service pursuant to Fed. R. Civ. P. 4;

10. Plaintiff is **NOTIFIED** that failure to return the completed service packets within the time required **will** result in dismissal of this action for want of prosecution and/or failure to follow Court orders;

11

11. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, any such failure may result in entry of judgment by default; and

12. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within (14) fourteen days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

12

Case 3:21-cv-00140-CEA-DCP   Document 5   Filed 06/14/21   Page 12 of 12   PageID #: 32